[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13158
Non-Argument Calendar
_____

D.C. Docket No. 8:16-cr-00487-SDM-AEP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TITO BURNEY, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 6, 2018)

Before MARTIN, JILL PRYOR and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), defendant Tito Burney Jr. appeals his total 33-month sentence.  On appeal, Burney argues that the district court erred in applying a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony offense.  After review, we affirm.

## I.  BACKGROUND FACTS

### A.    Offense Conduct

On February 26, 2016, police officers in St. Petersburg, Florida observed Burney standing beside a road with a bag of marijuana protruding from his front pocket.  When the officers searched Burney incident to his arrest, they found a loaded 9mm pistol in his front pocket.  At the time of his arrest, Burney was a convicted felon, having been convicted in state court of grand theft of a motor vehicle in November 2015.

In November 2016, a federal grand jury indicted Burney on one count of being a felon in possession of a firearm, namely the 9mm pistol found in his pocket.  On January 10, 2017, while Burney was on pretrial release, officers observed Burney and others in a Facebook Live video possessing guns and making threatening remarks.  As a consequence, on January 12, 2017, Burney was arrested for violating a special condition of his pretrial release by possessing a firearm.

2

On the same day, agents with the Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") searched Burney's home and discovered three guns, 30.4 grams of marijuana individually packaged in 13 separate plastic bags, and a digital scale next to the marijuana. Burney's mother told police officers that one of the firearms recovered during the search—a sawed-off shotgun—belonged to her, but said the other two guns likely belonged to Burney. Burney admitted that one of the two remaining guns was the gun he had possessed in the Facebook Live video and that both guns were given to him by two other men.

## B.    Sentencing

After Burney entered his guilty plea, the presentence investigation report ("PSI") recommended a four-level increase in Burney's offense level, pursuant to U.S.S.G. § 2K2.1(b)(6)(B), because he had possessed a firearm in connection with the felony offense of possession of marijuana with intent to distribute. The PSI stated that when Burney possessed the firearm on February 26, 2016, officers "found 22.6 grams of marijuana which was packaged in eight small Ziploc bags in the defendant's front right pocket." The PSI further stated, that when officers searched Burney's home on January 12, 2017, they found three firearms, "30.4 grams of marijuana which was packaged for distribution in 13 separate plastic bags, and a digital scale next to the baggies of marijuana."

Before and at sentencing, Burney objected to, among other things, the proposed four-level increase, arguing that there was no evidence that he had possessed the marijuana with the intent to sell it and that his marijuana possession was a misdemeanor under state law.  At the sentencing hearing, the government presented evidence in support of the four-level increase, including: (1) a DVD recording of the Facebook Live stream; and (2) the testimony of St. Petersburg police officer Brian Prest, who arrested Burney in February 2016, and ATF special agent Scott Boshek, who searched Burney's home in January 2017 and interviewed Burney and his mother after the search.  Burney presented testimony from his mother.

After hearing the evidence, the district court found that it was more probable than not that Burney intended to sell the marijuana and overruled Burney's objection to the four-level increase for possessing a firearm in connection with another felony offense.  Based on its resolution of Burney's objections, the district court found that Burney's total offense level was 17 and his criminal history category was III, which resulted in an advisory guidelines range of 30 to 37 months' imprisonment.  After hearing argument from the parties, the district court found no reason to vary from that advisory range and imposed a     33-month sentence.

## II.  SECTION 2K2.1(b)(6)(B) FIREARM INCREASE

Section 2K2.1(b)(6)(B) provides for a four-level increase if the defendant "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6)(B).  Application Note 14 to § 2K2.1(b)(6)(B) explains that the increase can be applied "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense."  U.S.S.G. § 2K2.1 cmt. n.14(A).  The commentary further provides that the increase applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia . . . . because the presence of the firearm has the potential of facilitating another felony offense or another offense."  Id. § 2K2.1 cmt. n.14(B).

This Court has determined that "[a] firearm found in close proximity to drugs or drug-related items simply 'has'—without any requirement for additional evidence—the potential to facilitate the drug offense."  See United States v. Carillo-Ayala, 713 F.3d 82, 92 (11th Cir. 2013).[1]

---

[1]A district court's finding that a firearm was possessed in connection with another felony offense is a factual finding that this Court reviews for clear error.  United States v. Whitfield, 50 F.3d 947, 949 & n. 8 (11th Cir. 1995).  To conclude the district court's finding was clearly erroneous, this Court must have a "definite and firm conviction that a mistake was committed."  United States v. Rothenberg, 610 F.3d 621, 624 (11th Cir. 2010) (quotation marks omitted).

### III.  BURNEY'S CLAIM

The district court did not clearly err in applying the four-level enhancement for possessing a firearm in connection with another felony offense.  The record amply supports the district court's determination by a preponderance of the evidence that Burney possessed a firearm in connection with his possession of marijuana with intent to distribute.[2]

According to the evidence presented at sentencing, when Burney was arrested in February 2016, he was standing on a sidewalk on Auburn Street in a high-crime area known for drug and gang activity and in a location where Officer Prest had seen drug distribution many times in the past.  The marijuana that Officer Prest found on Burney was packaged in eight "nickel or dime bags" ready to be sold individually.  At the time, Burney was wearing two pairs of shorts, one underneath the other, which Officer Prest explained was very common for individuals called "runners," who shed the outer layer of clothing to avoid detection as they flee police on foot.  Burney had the baggies of marijuana in the pocket of his outer pair of shorts, and the firearm directly beneath the marijuana in the pocket of the inner pair of shorts.  Prest said that Burney's possession of eight

---

[2]Because the district court properly imposed the § 2K2.1(b)(6)(B) increase, Burney's corollary argument that his sentence is procedurally unreasonable because of that alleged guidelines calculation error is also without merit.  In this appeal, Burney raises no other procedural error at his sentencing and does not contend his sentence is substantively unreasonable.

such individually packaged "nickel or dime" bags and a firearm while he was standing on the sidewalk in that location was consistent with distribution, not individual use.

Burney does not dispute that he was a member of the Auburn Park Gang, although he maintains that he has since disassociated himself from them. Furthermore, in January 2017, while on pretrial release, Burney appeared in a Facebook Live stream from the garage of his residence. During the stream, Burney and other individuals flashed firearms and threatened to shoot members of another gang from the Jacksonville area if they came to St. Petersburg.

During a search of Burney's residence two days later, ATF Special Agent Boshek found marijuana that was packaged similarly to the marijuana found in Burney's pocket in January 2016. Specifically, ATF agents found 30.4 total grams packaged into "13 dime bags." Twelve bags were found on top of a dresser in Burney's bedroom next to a digital scale. The thirteenth dime bag of marijuana was found with two firearms under a mattress in the bedroom of Burney's brother. In a subsequent interview, Burney admitted to special agent Boshek that he was holding one of those two firearms in the Facebook Live stream, that he obtained the firearm from "the gun guy" named "Masi," and that he kept the firearm in his brother's room.

In light of all this evidence, and given that Officer Prest found the 9mm pistol that Burney was charged with possessing in close proximity to marijuana and that the marijuana was packaged for distribution, the district court could conclude that the firearm had the potential to facilitate a drug offense.  See Carillo-Ayala, 713 F.3d at 92.  Accordingly, the district court did not err in imposing a four-level increase in Burney's offense level pursuant to U.S.S.G. § 2K2.1(b)(6)(B).

**AFFIRMED.**